UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| LARRY T. OUTLAW, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:08-CV-123 PS |
| | ) | |
| SUPERINTENDENT, | ) | |
| | ) | |
| Respondent. | ) | |

## OPINION AND ORDER

Larry Outlaw, a *pro se* prisoner, was docked 730 days of good time credit after being found guilty by the prison's Disciplinary Hearing Board ("DHB") of attempted trafficking. Outlaw filed this habeas corpus petition challenging the loss of his earned credit time. Here are the facts that led to Outlaw's loss of good time credit according to the conduct report prepared by Andrea Gordon, a prison nurse:

> I was called to D-Pod to do a[n] emergency blood sugar on D/O Outlaw. I set up the machine for him while C.O. Ledbetter stood @ my side. Outlaw kept talking about his medicines & blood sugars then started to talk about my name being Andrea & my middle initial M. (which is printed on my badge). Then he asked me about his HCRF [Health Care Request Form] & if he could just give it to me now. He handed me the pink envelope & I left. I opened the letter once I got back to the nurse's station to find a blank HCRF & the 2 page letter.

(DE 8-2.) Attached to the conduct report is a letter addressed to Nurse Gordon and stating in pertinent part:

> Let me be point blank & get straight to the issue at hand . . . I truly want you in my corner at this stage. . . . I would love to be Yo Suga Daddy . . . . Plus, I want you to be my 'Secret Coat' when it comes to doing some special favors for me that I want you to keep strictly between you & I . . . [S]ee how you come on D-Pod today to pass out evening meds? It would be a blessing to have my name on one of them medical envelopes w/it full of some tobacco, rolling papers etc.,

1

> because I'm sure you've been on this Unit long enough now to be able to slip me a package each time you come on D-Pod because it would be smooth to just drop-it-off & keep on moving . . . . I'm closing here by asking you to take care of Yo-Suga Daddy and you already know how to get down for me through them medicine envelopes . . . .

(DE 8-2.) The letter was signed "Yo Suga Daddy." (*Id.*) Nurse Gordon provided a copy of a prior HCRF completed by Outlaw to serve as a handwriting exemplar. (DE 8-4.) Officer Ledbetter also completed an incident report, in which he stated that he was present when Outlaw was having his blood sugar checked and witnessed Outlaw giving Nurse Gordon a pink envelope. (DE 8-2.)

On January 11, 2007, Outlaw was notified of the charges. The screening report reflects that he pled not guilty, requested a lay advocate, and requested the following witnesses and evidence: the health care administrator; another nurse at the prison named Nurse Travis; a medical incident report; and "sheets of medical packet." (DE 8-3.) He also asked that the DHB perform a lie detector test and obtain a handwriting analysis of the letter. (DE 8-3.) In an attached letter, Outlaw asserted that the requested witnesses and evidence would "verify offender's diabetic medical history" and show that his illness was "out of control." (DE 8-4.)

On January 17, 2007, a three-member DHB conducted a hearing, found Outlaw guilty, and imposed a sanction of 730 days lost earned credit time, one year of disciplinary segregation, and loss of phone privileges for six months, noting that this was his second violation of A111/113 since August 2006. (DE 8-7.) In reaching its decision, the DHB noted that Outlaw had refused to appear, and stated that it relied on the conduct report and Officer Ledbetter's report. (DE 8-7.) With respect to the evidence and witnesses requested by Outlaw, the DHB noted that the medical documents were confidential and could not be obtained, and that Nurse Travis and

the Health Care Administrator were not present at the time of the incident and thus had nothing to add to the charge. (DE 8-5.) The DHB also noted that a lie detector would not be given since it was not approved by the facility head, and that Outlaw's prior request for a health care form had been used to sample his handwriting. (DE 8-5.) After being found guilty, Outlaw appealed to the facility head and the final reviewing authority, but his appeals were denied. (DE 8-8.)

Where prisoners lose good time credits in prison disciplinary hearings, the Fourteenth Amendment Due Process Clause guarantees them certain procedural protections: (1) advance written notice of the charges; (2) an opportunity to be heard before an impartial decision maker; (3) an opportunity to call witnesses and present documentary evidence in defense when consistent with institutional safety and correctional goals; and (4) a written statement by a fact finder of evidence relied on and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539, 563-71 (1974). To satisfy due process there must also be "some evidence" to support the decision of the prison disciplinary board. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985).

Outlaw raises two claims in his petition. First, he claims there is insufficient evidence to support the DHB's decision. (DE 1 at 3.) In reviewing a DHB's decision, "courts are not required to conduct an examination of the entire record, independently assess witness credibility, or weigh the evidence, but only determine whether the prison disciplinary board's decision to revoke good time credits has some factual basis." *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999) (internal quotations omitted). "[T]he relevant question is whether there is *any* evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56 (emphasis added). The court will overturn the DHB's decision based on

insufficient evidence only if "no reasonable adjudicator could have found [the prisoner] guilty of the offense on the basis of the evidence presented." *Henderson v. United States Parole Comm'n*, 13 F.3d 1073, 1077 (7th Cir. 1994).

In this case, there is ample evidence in the record to support the conclusion reached by the DHB, including the conduct report, the attached letter, and the report of Officer Ledbetter. Although Outlaw denies that he did anything wrong, it is not the province of this court to reweigh the evidence and make its own determination of guilt or innocence. *McPherson*, 188 F.3d at 786. Because there is some evidence to support the DHB's determination, there is no basis for granting habeas relief on this ground.

Outlaw also claims that he was denied due process when the DHB refused to consider the witnesses and evidence he sought to present. (DE 1 at 4.) A prisoner has a limited right to call witnesses and present evidence consistent with correctional goals and safety. *Wolff,* 418 U.S. at 566*; Sweeney v. Parke*, 113 F.3d 716, 719-20 (7th Cir. 1997), *overruled on other grounds by White v. Ind. Parole Bd.*, 266 F.3d 759, 765-66 (7th Cir. 2001). But a prison disciplinary committee may deny witness or evidence requests that threaten institutional goals or are irrelevant, repetitive, or unnecessary. *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003). Further, denial of the right to present evidence is considered harmless unless the evidence could have aided the prisoner's defense. *Id*.

Outlaw asserts that the medical records and witnesses he sought to present would have demonstrated that he had a history of diabetes and that he had "approval to hand deliver all medical request forms to any and all nurses." (DE 13-2 at 9.) Even if this is true, whether or not Outlaw had diabetes or was permitted to hand the nurses a medical request was not the issue

4

before the DHB. The issue was whether Outlaw asked Nurse Gordon to traffic on his behalf. Outlaw's medical records documenting his diabetes and the testimony of two witnesses who were not present during this incident were irrelevant to the DHB's determination. Therefore, Outlaw's due process rights were not violated when the DHB did not consider this evidence.

Outlaw also had no right to require the DHB to conduct a lie detector test or obtain a formal handwriting analysis of the letter. Outlaw raised a similar argument in another case, and it was rejected by the court because an inmate is not entitled to the creation of favorable evidence in a disciplinary proceeding. *See Outlaw v. Wilson*, No. 3:07cv54, 2007 WL 1295815, at *2 (N.D. Ind. Apr. 30, 2007) (inmate had no right to require DHB to create favorable evidence in the form of handwriting analysis or lie detector test results); *see also Freitas v. Auger*, 837 F.2d 806, 812 n.13 (8th Cir. 1988) (prisoners are not entitled to polygraph tests in disciplinary hearings). As for the handwriting analysis, the Court notes that the DHB did consider a prior document written by Outlaw as a handwriting sample, and a review by even an untrained observer reveals a distinct similarity between the handwriting in the letter Nurse Gordon received and the handwriting in this document. (*See* DE 8-2, 8-4.)

The habeas corpus petition (DE 1) is **DENIED**.

**SO ORDERED**.

ENTERED: November 13, 2009.

                                          s/ Philip P. Simon
                                         PHILIP P. SIMON, JUDGE
                                         UNITED STATES DISTRICT COURT